Hon. John C. Coughenour

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| L.W., in her capacity as parent and guardian of minor student B.W.,<br><br>Plaintiff,<br>vs.<br><br>RENTON SCHOOL DISTRICT; ~~TIMOTHY SHULTZ, in his official capacity; STEPHEN HARRIS, in his official capacity; VICTORIA BLAKENEY, in her official capacity; and SHANNON HARVEY, in her official capacity~~,<br><br>Defendants | Case No.: 2:19-cv-65<br><br><br>FIRST AMENDED COMPLAINT<br><br>JURY DEMAND |

Plaintiffs, by and through their attorneys, allege as follows:

**I.   PARTIES**

1.1   Plaintiff L.W. is the parent and guardian of her daughter B.W., a minor.

1.2   B.W. was a student in the Renton School District during the time the events alleged in this Complaint occurred.

1.3   B.W. is female.

1.4   B.W. is African American.

1.5   B.W. is student with a disability, as defined by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1485, the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., and Section 504 of the Rehabilitation Act of 1973.

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 1 OF 20

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101

1.6    L.W. and B.W. reside in the city of Renton, in King County, Washington.

1.7    Defendant Renton School District is a public school district located in King County, Washington.

## II.    JURISDICTION AND VENUE

2.1    This Court has jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. § 1331, including any civil action to redress the deprivation of any right, privilege, or immunity secured by the Constitution, laws, or treaties caused under the color of state law, statute, ordinance, regulation, custom, or usage pursuant to 28 U.S.C. § 1343.

2.2    This case arises under federal laws and this Court therefore has jurisdiction.

2.3    A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred pursuant to 28 U.S.C. § 1391.

2.4    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all of the incidents complained of in this Complaint occurred in the city of Renton, in King County, Washington.

## III.    FACTUAL ALLEGATIONS

3.1    B.W. was a student at Nelson Middle School in the Renton School District beginning in the 2017-2018 school year.

3.2    Prior to the incidents giving rise to liability here, B.W. had a pre-existing diagnosis of PTSD, anxiety, and depressive episodes.

3.3    In or around April 2017, the District implemented a student support plan pursuant to Section 504 to support those disabilities.

3.4    In September 2017, B.W. was also identified as a student with a specific learning disability that qualified her for services in mathematics.

3.5    At the time she began middle school during the 2017-2018 school year, B.W. also suffered from a physical disability called genu valgum – a condition commonly described as

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 2 OF 20

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101

"knock-knees," which was characterized by an inability to touch her feet together while simultaneously straightening her legs, due to the inward angle of her knees. This condition caused pain and difficulties walking.

3.6     After years of medical monitoring in the years preceding the 2017-2018 school year, B.W.'s doctors recommended moving forward with a guided growth surgery, which requires a doctor to make an incision at the growth plate to secure a titanium plate to the bone and insert screws to correct the misaligned curvature of the bone. Once inserted, the young patient continues to grow until the bone curvature has been corrected.

3.7     The timing of this surgery was critical because B.W. needed to have completed some growth (to prevent reversion) and to have sufficient growth left to make the titanium screws and plates effective at guiding the bone growth.

3.8     Timing the removal of the plates and screws was also critical to avoid over-correcting and to prevent B.W. from becoming bow-legged.

3.9     In this case, B.W.'s treatments were disrupted and her healing process was made more difficult by the foreseeable and preventable gender- and disability-based harassment, intimidation, and bullying she suffered at school.

3.10    At the beginning of the 2017-2018 school year, a student named C.M. began harassing B.W. about her physical disabilities.

3.11    C.M. is a male.

3.12    C.M. is African American descent.

3.13    C.M. has a disability.

3.14    During social studies class, C.M. asked B.W. disparaging questions, such as: "What's wrong with your legs?" or "Why do you walk funny?"

3.15    B.W. sought guidance from her mother about the harassment, who told her to tell her teacher about it, which B.W. did.

3.16    Despite reporting the harassment to Mr. Harris, he did nothing to stop it or to

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 3 OF 20

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101

prevent further bullying.

3.17  Mr. Harris did not report the incidents to the building principal, to the District's HIB Coordinator, or to the District's Section 504 or ADA Coordinator.

3.18  Based on the training records in Mr. Harris's employment file, it appears that he was not trained or equipped to respond to the Harassment, Intimidation, and Bullying of a student in violation of the District's Procedure 3207P – which states that "[s]taff will receive annual training on the school district's policy and procedure, including staff roles and responsibilities, and the use of the district's Incident Reporting Form" – and of the District's duty to share its HIB policy with school employees pursuant to RCW 28A.300.285(1).

3.19  Neither B.W. nor her mother L.W. were provided with information on how to report harassment, intimidation, or bullying.

3.20  The Nelsen Middle School handbook only defined the act of harassment, intimidation, and bullying and stated that "[c]onsequences will be determined by administrator based on the severity of the act."

3.21  There was no reference to District policy, the procedure for responding to allegations of bullying, or the process for reporting any bullying.

3.22  This was in violation of the District's Procedure 3207P – which states that "the superintendent will ensure that a statement summarizing the policy and procedure is provided in student, staff, volunteer, and parent handbooks."

3.23  On October 6, 2017, B.W. went in for her first surgery to implant the steel guides in her joints.

3.24  She was discharged from the hospital on October 8, 2017.

3.25  On October 11, 2017, L.W. emailed B.W.'s teachers for school work, which had not been made available earlier.

3.26  On October 18, 2017, L.W. emailed the school psychologist to inform her that B.W. would return to school the next day in a wheelchair.

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 4 OF 20

Cedar Law PLLC
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101

3.27   L.W. requested wheelchair-accessible transportation and support for B.W. at school to help her move from classes and to and from the bus.

3.28   On October 19, 2017, the school failed to send a wheelchair-accessible mode of transportation to B.W.'s home to bring her to school.

3.29   L.W. had to take B.W. to school on October 19, 2017, in a wheelchair because of the school's failure to provide the appropriate transportation.

3.30   L.W. had to contact the school multiple times to arrange appropriate transportation for B.W.

3.31   The District did not have any support available for B.W. when she returned to school on October 19, 2017.

3.32   Over a week passed before the District provided B.W. with the support she needed to move between classes.

3.33   C.M. escalated his harassment of B.W. after her return to school.

3.34   C.M. mocked her for being disabled and wheelchair-bound.

3.35   C.M. called B.W. a "BFG" (big fat girl).

3.36   C.M. terrorized her regularly.

3.37   Ultimately, C.M. went on a rant and called her profanity-laden names during social studies, targeting her on the basis of gender and disability.

3.38   Mr. Harris witnessed this incident and failed, again, to report the harassment, intimidation, and bullying to the school principal, the District's HIB officer, or the non-discrimination coordinator.

3.39   Troubled by the school's lack of response, L.W. began calling the school to report the harassment and visited the school on multiple occasions to discuss the issue.

3.40   L.W. reported this to the teacher and the principal.

3.41   The paraprofessional who was finally asked to assist B.W. travel between classes witnessed the harassment and reported it to the building principal.

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 5 OF 20

Cedar Law PLLC
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101

3.42  No one at the school followed the legal obligations to make a report of harassment (including disability or gender harassment), conduct any investigation into the incident, prepare a safety plan, or took any other reasonable measures to protect B.W. from the escalating harassment.

3.43  C.M. continued to intimidate B.W., posturing at her aggressively to try getting her to flinch in fear, calling her a "bitch" and "fucking bitch" in the presence of teachers and other staff.

3.44  C.M.'s aggression towards B.W. was reasonably foreseeable based on his prior conduct towards her and other students.

3.45  L.W. called the school to report the harassment on October 23, 2017.

3.46  She called again on December 11, 2017.

3.47  She missed work to come in and talk to school administrators on January 11, 2018.

3.48  She missed work a second time to visit the school and report the gender and disability-based harassment to school administrators on January 12, 2018.

3.49  She missed work a third time to visit the school and report the gender and disability-based harassment to school administrators on January 19, 2018.

3.50  She missed work a fourth time to visit the school and report the gender and disability-based harassment to school administrators on February 2, 2018.

3.51  On March 12, 2018, L.W. made yet another trip to the school's office to discuss the matter.

3.52  Despite all of L.W.'s reports of harassment, nobody at the school filled out a HIB (Harassment, Intimidation and Bullying) or Title IX report, conducted an investigation, prepared a student safety or support plan, or took any action to protect B.W.

3.53  B.W.'s Assistant Principal, Timothy Shultz, ignored these reports and did nothing to address the concerns.

3.54  A review of Mr. Shultz's training records shows that he was trained to respond to

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 6 OF 20

Cedar Law PLLC
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101

1  the Harassment, Intimidation, and Bullying and Discrimination of students.

2      3.55    Mr. Shultz took at least one course on Nondiscrimination and Affirmative Action in October 2015 and one course on the Prohibition of Harassment, Intimidation, and Bullying in October 2015.

    3.56    Rather than report the incident to the District's HIB Coordinator, 504 Coordinator, or Title IX Coordinator for investigation and response, Mr. Schultz was deliberately indifferent to B.W.'s situation.

    3.57    The harassment therefore continued unabated.

    3.58    B.W. was able to discontinue use of her wheelchair within 5 weeks of her surgery.

    3.59    B.W. transitioned to crutches, then to walking on her own.

    3.60    C.M. did not stop harassing B.W. or targeting her based on disability and gender after she discontinued use of her medical devices.

    3.61    On April 18, 2018, during Social Studies class, C.M. was harassing B.W. again. He threw paper at her and other bothering behaviors.

    3.62    Mr. Harris did not intervene.

    3.63    Just after Social Studies ended, C.M. stood between B.W. and the door and blocked her from leaving the class.

    3.64    B.W. attempted to squeeze past, but C.M. again blocked her from leaving the classroom.

    3.65    B.W. tried pushing past him again, but he punched her on the right side of her face.

    3.66    He kept punching her until she fell to the floor.

    3.67    He did not stop.

    3.68    B.W. attempted to defend herself and hit C.M. back in an attempt to get him to stop.

    3.69    Medical records show that her hands had defensive marks on them from fighting back.

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 7 OF 20

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101

3.70   B.W. broke her $165 FitBit while trying to defend herself.

3.71   Her teacher, Mr. Harris, did not stop the assault.

3.72   Instead, C.M. punched B.W. repeatedly while she lay on the floor.

3.73   C.M. beat B.W. unconscious.

3.74   Despite her head injury, the school nurse did not examine B.W. and the school staff moved B.W. to the office in clear violation of District Policy 3418 and Procedure 3814P and in callous disregard to her disabilities and susceptibility to further injury.

3.75   Rather than calling a licensed health care professional or her mother immediately, school administrators took the time to wash the blood from B.W.'s clothing and face to hide the extent of her injuries.

3.76   Nobody took photographs or documented B.W.'s condition.

3.77   By the time L.W. arrived at school, B.W. was washed clean of the blood and was waiting for her mother wearing a wet sweatshirt with the extent of her injuries concealed.

3.78   No one filed an HIB report, escalated the matter to the District's HIB Coordinator, 504 Coordinator, Title IX Coordinator, or any other District-level compliance officer.

3.79   Nobody took any actions to prevent further harassment in response to the April 18, 2018, assault.

3.80   L.W. took B.W. to the local urgent care facility where she was diagnosed with an acute post-traumatic headache and potential concussion.

3.81   B.W.'s injuries included facial swelling on the right side of her face, a bloody nose, and blood in the mouth.

3.82   B.W. was lightheaded with a headache, nausea, and sensitivity to light and sound.

3.83   B.W. missed two days of school.

3.84   Her mother missed two days of work for observation and additional medical treatment.

3.85   On April 19, 2018, B.W. went to the dentist due to the unending pain in her jaw,

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 8 OF 20

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101

1  her inability to open her mouth, and her inability to bring her teeth together.

2      3.86    The dentist's x-rays showed that her teeth were broken under the gum line on the
3  roots of teeth 3, 4, 5, 6, 7, and 8 (these include prominent teeth that make up a person's smile).

4      3.87    On April 20, 2018, B.W. went to the doctor as a follow-up to the assault, due to
5  pain across her nasal bridge, zygomatic process, and upper orbit.

6      3.88    The doctor noted some bruising and that B.W. felt like her teeth were not coming
7  together properly.

8      3.89    B.W.'s doctor diagnosed her with a concussion (a closed head injury) and
9  recommended that she obtain a CT scan to rule out any fractures in the head and neck area.

10      3.90    B.W. returned to school on April 23, 2018.

11      3.91    Despite having been a victim of harassment, intimidation, and bullying, she was
12  not offered a student support plan, a safety plan, or any other remedies that would have been
13  expected from a reasonably prudent school district.

14      3.92    Instead, the District initially sanctioned B.W. for fighting in school, thereby
15  causing additional emotional distress.

16      3.93    B.W. was returned to school with no assurance that the aggressor would not assault
17  her again.

18      3.94    B.W. had to return to her classes, including those shared with C.M., without a
19  safety plan or additional supervision and support.

20      3.95    The District did not reconvene B.W.'s IEP team to provide her with any support
21  for her trauma from the assaults and harassment or in any way address her pre-existing emotional
22  disabilities or to assess whether the harassment, intimidation, bullying, and physical assault
23  impaired her ability to access her education.

24      3.96    L.W. repeatedly sought assurances of her daughter's safety from District officials,
25  who ignored her.

26      3.97    The school planned to return C.M. to Nelson and to the classes he shared with B.W.

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 9 OF 20

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101

after a 10-day suspension

3.98 It failed to notify L.W. of its intentions.

3.99 L.W. only discovered this after one of C.M.'s friends informed B.W. that he was going to return to school the following day.

3.100 B.W. immediately called her mother to tell her this.

3.101 In response, L.W. placed several calls to the office of Vickie Damon, Chief of Secondary Schools to request a safety planning meeting.

3.102 These calls were not returned for several hours.

3.103 When L.W. finally spoke to Ms. Damon, L.W. asked the District not to allow C.M. to return to Nelsen.

3.104 Ms. Damon initially refused this request, stating that C.M. had a right to an education.

3.105 L.W. clarified that she would seek a temporary restraining order preventing the harasser from being within 50 feet of her daughter and asked whether the District could transfer C.M. to a different school instead.

3.106 L.W. also asked for a Safety Planning Meeting.

3.107 Ms. Damon asked to call L.W. back and L.W. agreed.

3.108 Ms. Damon never called L.W. back.

3.109 Instead, Ms. Damon's secretary called to let L.W. know that the District saw no need for a safety planning meeting, because C.M. would be administratively reassigned to another campus.

3.110 In so doing, the District continued to fail to address B.W.'s safety and well-being in any other way and failed its duty to provide a safe and healthy school environment.

3.111 On April 27, 2018, B.W. went to the doctor for an appointment to discuss the operation scheduled to address her genu valgum, which was supposed to take place on April 30, 2018.

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 10 OF 20

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101

3.112 Due to the head injury and concussion and the potential risk of anesthesia for a patient in her condition, the doctors agreed that the surgery needed to be postponed.

3.113 B.W.'s guided growth for her condition consequently continued past the point of correction, towards overcorrection.

3.114 She suffered significant physical pain as a result and was placed at unnecessary physical risk.

3.115 Feeling unsafe and unable to attend school, B.W. sought help.

3.116 On May 1, 2018, B.W. met with a social worker for support reintegrating back to school.

3.117 She was having severe separation anxiety from her mother and her step-father, Germel Goodrich, and could not be left alone.

3.118 She slept with the lights on and sat facing the door or exit to the room.

3.119 Despite her parents' best efforts at home, they were unable to provide her with the support she needed in school.

3.120 B.W.'s stepfather even asked school administrators for permission to escort B.W. to class. However, this request was denied.

3.121 The District took no actions to propose alternative supports.

3.122 On May 2, 2018, school psychologist Margo Shine asked school administrators whether the teaching team needed to make any accommodations for B.W. in light of the assault.

3.123 Ms. Shine never received any response.

3.124 B.W. began exhibiting school refusal.

3.125 She stopped attending classes and started going to the "ISI room" instead.

3.126 After about a week, her PE teacher noticed the absences and expressed concern to the school administrators on May 8, 2018.

3.127 However, the school administrators did not take any action to address this symptom of B.W.'s distress – either through her IEP, her 504 Plan, or a student support plan.

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 11 OF 20

Cedar Law PLLC
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101

3.128    They remained deliberately indifferent to the manifestation of emotional disabilities and to the bullying, harassment, intimidation, and assault.

3.129    None of the school administrators ever contacted L.W. to discuss B.W.'s absences or school refusal.

3.130    The school instead initiated disciplinary action against B.W. for truancy.

3.131    On May 17, 2018, Ms. Burcham sent an email to school administrators stating that she had not seen B.W. for at least 4 weeks and asked whether B.W. had been transferred or whether she was truant.

3.132    The ISI teacher, Ms. Cummings McNeil, stated that B.W. had been coming to the ISI room saying that her doctor told her she could not do specific tasks for computer class, PE, and testing periods. Ms. Cummings McNeil wrote that B.W. "is still claiming the concussion thing it's been a month," opined that B.W. should at least be going to classes, and suggested holding a parent meeting.

3.133    However, the Dean of Students, Joan Lyke, dismissed these concerns and took no actions to address the school avoidance (which was a symptom of the trauma following the harassment, intimidation, and bullying).

3.134    Instead, she said that she had sent two requests to B.W.'s doctor seeking guidance on accommodations and suggested that it did not matter whether B.W. was skipping PE because she was "supposedly having surgery on her legs again on 5/22, next week so will probably be out of PE after that anyway."

3.135    On May 22, 2018, B.W. had a second surgery to remove the steel plates in her legs.

3.136    She returned to school on May 29, 2018, in a wheelchair.

3.137    When she returned to school, teachers and staff continued to ignore B.W.

3.138    Her PE teacher marked her absent all week, despite B.W.'s 504 and manifest physical inability to participate in PE.

3.139    It was not until two weeks after this surgery that the school nurse sent around an

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 12 OF 20

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101

email asking teachers to accommodate B.W.'s disability, to give her extra passing time to get to her next class, to carry her backpack, and to spend PE in the library or the nurse's office.

**2018-2019 School Year**

3.140   During the following school year (2018-2019), the assailant, C.M., has been seen "hanging out" at Nelson Middle School because he seemed to be dating another student there.

3.141   B.W. remains afraid of C.M. and contact with him as well as the female student he is dating.

3.142   The District has taken insufficient steps to protect B.W. from continued trauma.

3.143   As of this date and in violation of District Policy 3207 ("Prohibition of Harasasment, Intimidation, and Bullying"), the District has failed to convene an IEP or 504 team meeting to discuss the impact that the disability- and gender-based harassment, intimidation, bullying, and assault had on B.W.'s ability to access her education to the same extent as other students without disabilities.

3.144   Despite explicit requests for corrective measures available to all students who were victims of harassment, intimidation, and bullying, the District has declined to offer any counseling or other corrective measures. This is also in violation of District Policy (see e.g., Policy 3207P, Step 6).

3.145   <u>L.W. sought assistance from an attorney to seek help for her daughter in 2018.</u>

3.146   <u>L.W. and B.W. are currently represented by counsel.</u>

3.147   <u>On multiple occasions, L.W. and her counsel asked the District to communicate through counsel, particularly in the areas related to B.W.'s disability-related educational issues.</u>

3.148   <u>Despite multiple requests from L.W. and her counsel to communicate with L.W. through her attorneys rather than with her directly, L.W.'s requests have been repeatedly ignored.</u>

3.149   <u>Despite L.W.'s explicit request to include B.W.'s attorneys on issues related to B.W.'s accommodations, special education, and accommodations, these requests have been repeatedly ignored.</u>

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 13 OF 20

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101

3.150   B.W. has suffered significant physical harm as a result of the District's actions and failures to act.

3.151   B.W.'s physical injuries included: a concussion, 6 broken teeth under the gum line, and unnecessary pain and suffering from delayed surgery.

3.152   B.W. still suffers ongoing bloody noses.

3.153   B.W. cannot chew gum and has to be cautious of chewing anything that might disrupt the extreme fragility of her teeth.

3.154   B.W. and her family have suffered significant emotional damage, which includes: exacerbation of her preexisting PTSD and depression, along with the onset of severe anxiety.

3.155   Her anxiety manifests in social anxiety, mistrust of authority, and self-harm through hair-pulling.

3.156   Prior to the 2017-2018 school year, B.W. was an avid dancer. She performed in national competitions and shows, in jazz, modern, hip hop, tap, and ballet. She danced until her physical disability required her to put her dancing on hiatus while she underwent surgery.

3.157   Since the incident, B.W. has not danced. B.W.'s anxiety, depression, and PTSD prevent her from engaging in a beloved activity.

3.158   She is terrified of being seen or noticed by anybody outside of her family.

3.159   She consequently gained approximately 20 pounds, which increased her insecurity and social anxiety.

3.160   B.W. is now afraid of many day-to-day activities.

3.161   She was unable to sleep in her own room for a long time, preferring to sleep in the living room with lights on.

3.162   When she does sleep, she suffers from night terrors.

3.163   She is extremely sensitive to violence and loud noises.

3.164   B.W. cannot walk behind her parents, but always walks in front of her mother and stepfather. She is hypervigilant and never wants to be alone.

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 14 OF 20

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101

3.165   Her parents cannot engage in simple activities such as grocery shopping or social functions without a trusted family member to monitor and chaperone B.W.

3.166   As a result of the impact of the bullying and assault earlier this year, L.W. was unable to work for several months so that she could care for her daughter B.W.

## IV.   CAUSES OF ACTION

4.1   Plaintiff B.W. repeats and realleges paragraphs 1.1 through 3.161 as if fully set forth herein.

4.2   Plaintiff B.W. brings this action pursuant to 42 U.S.C. § 1983 for violations of the following substantive rights guaranteed her under the Constitution and federal laws.

4.3   At all material times, the District and its employees acted under color of law.

4.4   At all material times, the acts or omissions of the District's employees were taken within the scope of their employment.

4.5   At all material times, the District's employees acted pursuant to the custom, policy or practice of the school.

4.6   During times relevant to these factual allegations, the District employees whose actions caused B.W.'s deprivation of rights were not provided with annual training on non-discrimination.

4.7   At all material times, the District's employees who had the authority to take corrective action of B.W.'s deprivation of rights had notice of the threat of deprivation or of the deprivation itself, but failed to take appropriate action to address them.

**A.   FIRST CAUSE OF ACTION: DISABILITY-BASED DISCRIMINATION PURSUANT TO THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT**

4.8   Plaintiff B.W. repeats and realleges paragraphs 1.1 through 4.7 as if fully set forth herein.

4.9   B.W. has a disability.

4.10   Despite her requests for accommodations to access her education, the District

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 15 OF 20

Cedar Law PLLC
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101

employees deprived her of those accommodations and modifications.

  4.11 The District's employees had the duty to respond to reports of disability-based harassment, intimidation, and bullying, but remained deliberately indifferent.

  4.12 The Middle School has a custom of tolerating harassment, intimidation, and bullying among students with disabilities.

  4.13 Nelsen does not have a custom of following the District's policy or the law when remediating the effects of harassment, intimidation, and bullying.

  4.14 The employees who had the authority to take corrective action had actual notice of the harassment, intimidation, and bullying and were deliberately indifferent to the effects of the disability-based harassment, intimidation, and bullying.

  4.15 The District employees did not provide B.W. with the corrective measures available to all students who have suffered harassment, intimidation, and bullying, despite her requests for counseling services and other support.

  4.16 Section 504 requires that schools carry out their duties in a manner that supports "the involvement of an individual's representative if an individual with a disability requests, desires, or needs such support." 29 USC 701(c)(4).

  4.17 B.W. and her parent L.W. request, desire, and need support navigating B.W.'s educational issues.

  4.18 Despite multiple requests from L.W. to involve and include her attorneys in B.W.'s educational issues through the conclusion of any legal proceedings against the District, the District's employees and representatives have repeatedly ignored these requests.

  4.19 As a result of the District's actions, B.W. suffered damages of a nature and in an amount to be shown at trial.

  4.20 Pursuant to 42 U.S.C. § 1983, the District is liable for the violations of B.W.'s substantive rights to reasonable accommodations for her disability, ~~and~~ protection from disability-based discrimination, and to involve a representative who is requested, desired, and needed, as

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 16 OF 20

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101

guaranteed her under federal laws.

**B. SECOND CAUSE OF ACTION: DISCRIMINATION BASED ON GENDER PURSUANT TO TITLE IX OF THE EDCATIONAL AMENDMENTS**

4.21   Plaintiff B.W. repeats and realleges paragraphs 1.1 through 4.17 as if fully set forth herein.

4.22   Pursuant to Title IX of the Educational Amendments, the District had a duty to investigate allegations of sexual or gender-based harassment, to stop the harassment, and to remediate its effects.

4.23   Nelsen Middle School has a custom of tolerating sexual harassment and gender-based harassment, as evidenced by its persistent failure to train employees to follow the District's non-discrimination policy.

4.24   The District employees whose actions caused B.W.'s deprivation of rights were not provided with annual training on non-discrimination.

4.25   School officials with the authority to take corrective action had notice of the gender-based harassment and were deliberately indifferent to the gender-based harassment.

4.26   As a result of the District's actions, B.W. suffered damages of a nature and in an amount to be shown at trial.

4.27   Pursuant to 42 U.S.C. § 1983, the District is liable for the violations of B.W.'s substantive rights to be free from gender-based harassment guaranteed by federal laws.

**C. THIRD CAUSE OF ACTION: VIOLATION OF 14TH AMENDMENT RIGHTS TO SUBSTANTIVE DUE PROCESS – STATE CREATED DANGER**

4.28   Plaintiff B.W. repeats and realleges paragraphs 1.1 through 4.24 as if fully set forth herein.

4.29   The District knew that C.M. had a history of behavioral concerns.

4.30   The District placed C.M. in B.W.'s class without specific and individualized adult supervision for C.W.

4.31   The District placed C.M. in B.W.'s class without training the teacher on how to

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 17 OF 20

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101

take appropriate action to respond to any behavioral concerns.

4.32   In so doing, the District increased the risk to B.W. associated with C.M.'s dangerous propensities.

4.33   The District provided C.M. with the opportunity to harm B.W. by failing to intervene on any of the occasions prior to and including the assault.

4.34   The District's employees who had the authority to take action to prevent the danger had notice of C.M.'s propensity for violence, but failed to take appropriate action to address them.

4.35   As a result of the District's actions and inactions, B.W. suffered damages of a nature and in an amount to be shown at trial.

4.36   Pursuant to 42 U.S.C. § 1983, the District created a danger to B.W. in violation of her due process rights guaranteed under the Constitution.

**D. FOURTH CAUSE OF ACTION: RACE-BASED DISCRIMINATION IN VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT**

4.37   Plaintiff B.W. repeats and realleges paragraphs 1.1 through 4.33 as if fully set forth herein.

4.38   B.W. is African American.

4.39   C.M. is African American.

4.40   At all material times, the District's employees acted pursuant to the custom, policy or practice of the school.

4.41   During times relevant to these factual allegations, the District employees whose actions caused B.W.'s deprivation of rights were not provided with annual training on non-discrimination pursuant to Title VI of the Civil Rights Act.

4.42   The District employees who had the authority to take corrective action did not take the complaints of B.W.'s mother seriously, failed to intervene in the harassment, and was deliberately indifferent to the needs of these two students because of their race and their perceived lack of recourse.

4.43   B.W. was not the only student of color whose distress was ignored and who was

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 18 OF 20

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101

consequently assaulted as a result of the District's indifference.

4.44   As a result of the District's actions and inactions, B.W. suffered damages of a nature and in an amount to be shown at trial.

4.45   Pursuant to 42 U.S.C. § 1983, the District is liable for the violations of B.W.'s right to be free from discrimination on the basis of race, color, and national origin, as guaranteed by federal laws.

E. **FIFTH CAUSE OF ACTION: DEPRIVATION OF EQUAL PROTECTION PURSUANT TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.**

4.46   Plaintiff B.W. repeats and realleges paragraphs 1.1 through 4.41 as if fully set forth herein.

4.47   B.W. is African American and is a student with a disability.

4.48   The District employees whose actions caused B.W.'s deprivation of rights were not provided with annual training on non-discrimination.

4.49   Based on her race and/or her status as a person with a disability, the District's employees were deliberately indifferent to the reports of harassment, intimidation, and bullying.

4.50   At all material times, the District's employees who had the authority to take corrective action of B.W.'s deprivation of rights had notice of the threat of deprivation or of the deprivation itself, but they failed to take appropriate action to address them.

4.51   As a result of the District's actions and inactions, B.W. suffered damages of a nature and in an amount to be shown at trial.

4.52   Pursuant to 42 U.S.C. § 1983, the District is liable for the violations of B.W.'s rights to be treated like other non-minority students or students without disabilities, as guaranteed by the federal constitution.

**PRAYER FOR RELIEF**

Plaintiffs request the following relief as follows:

A.   A declaration from the court finding that the District violated its duties under

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 19 OF 20

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101

1  federal law and Constitution;

2      B.    An award of damages in amounts to be proved at the time of trial;

3      C.    An award of costs and attorney's fees; and

4      D.    For such other and further relief as the Court may deem just and equitable.

5  Dated this 19th day of March, 2019.

                                            _____
                                            Jinju Park, WSBA No. 48995
                                            Shannon M. McMinimee, WSBA No. 34471
                                            Attorneys for Plaintiff L.W. in her capacity as parent and guardian of minor student B.W.

COMPLAINT
CASE NO. 2:19-cv-65
PAGE 20 OF 20

**Cedar Law PLLC**
1001 Fourth Avenue #4400
Seattle, WA 98154
info@cedarlawpllc.com
Tel 206.607.8277 • Fax 206.237.9101